IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KYLE W. SHIRLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-2503-DWD |
| | ) |
| GADYACES SERRALTA, *in his official capacity as Acting Director of the United States Marshals Service*, | ) ) ) |
| | ) |
| Defendant. | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

On November 18, 2024, Plaintiff Kyle Shirley filed this action requesting judicial review of the administrative proceedings that affirmed his removal from his position as a Deputy United States Marshall ("DUSM") with the United States Marshall Service ("USMS"). Now before the Court is Defendant Gadyaces Serralta's, Acting Director, United States Marshall Service ("Defendant"), Motion for Summary Judgment and Motion to Dismiss for Failure to State a Claim. For the reasons detailed below, the Motions are **GRANTED**.

## BACKGROUND

The administrative record provides the following undisputed facts. In September of 2012, Plaintiff suffered a back injury while arresting a fugitive in the line of duty as a DUSM. (Doc. 20-1, pg. 148). From the time of his injury to July of 2013, Plaintiff was placed on light duty status. (Id., pg. 149). Plaintiff's status was then changed to leave without pay while on workers' compensation leave. (Id., pgs. 277-79).

Plaintiff received treatment for his back injury from Dr. David Kennedy ("Dr. Kennedy"), a neurosurgeon. Dr. Kennedy began to treat Plaintiff in June 2013 and gave a history of injury not inconsistent with the reports of injury found elsewhere in the record. According to Dr. Kennedy, Plaintiff's initial radiographic studies revealed evidence of a disc herniation at L5-S1 and a pre-surgical MRI demonstrated a synovial cyst at L4-5. The latter condition Dr. Kennedy did not believe required surgery. A L5-S1 microdiscectomy was conduct which provided some initial relief. However, Plaintiff's began to experience severe right leg pain which Dr. Kennedy attributed to spinal stenosis at L4-5 due a enlarged synovial cyst. A L-4-S1 fusion was then conducted in December 2014. But, his pain was not relieved by that operation and, in fact, grew progressively more severe. New radiographic studies demonstrated that the lateral interbody fusion at L4-5 had not fused, requiring a third surgery. (Doc. 20-2, pg. 35)

In February of 2015, Defendant proposed Plaintiff's removal from his position of DUSM due to a medical inability to perform the functions of the job, but it was ultimately held in abeyance due to his anticipated return to work. (Id., pg. 127). Plaintiff was cleared to return to full duty in August of 2015 but was then placed on limited status the following month for medical reasons. (Id., pgs. 193-200). He was again cleared to return to work without restrictions in December 2015. (Id., pgs. 201-02).

Defendant received a Physicians Evaluation Report and note from Dr. Kennedy stating that Plaintiff had suffered a severe decrease of range of motion in his lumbar and should not work from March 1, 2016, to April 5, 2016. (Id., pgs. 248-50). Dr. Kennedy

authored another Physicians Evaluation Report on June 1, 2016, indicating that Plaintiff underwent a fourth back surgery. (Id., pgs. 246-47). Defendant's Reviewing Medical Officer, Dr. Tufail Shaikh ("Dr. Shaikh"), reviewed the March Physicians Evaluation Report and recommended an independent medical evaluation and that Plaintiff be restricted from aggressive enforcement activities. (Id., pg. 204). Dr. Thomas Albus ("Dr. Albus") conducted that independent medical review of Plaintiff's records and issued a report dated June 9, 2016, finding it unlikely that Plaintiff would ever return to unrestricted work activities as a DUSM. (Id., pgs. 224-26). Dr. Shaikh reviewed the report from Dr. Albus and concluded that Plaintiff should be determined as "Not Medically Qualified" for the position of DUSM because chronic and permanent medical conditions would prevent him from performing the full duties of the position. (Id., pg. 205).

On July 18, 2016, Defendant issued a Fitness-for-Duty Determination letter to Plaintiff finding him medically disqualified, which Plaintiff appealed. (Id., pgs. 220-22). Included in Plaintiff's appeal was another note from Dr. Kennedy indicating that it was highly likely that Plaintiff would return to work that December. (Id., pg. 236). Another of Defendant's Reviewing Medical Officers, Dr. Frederic Glass ("Dr. Glass"), then reviewed the previous reports from Dr. Albus, Dr. Shaikh and Dr. Kennedy and recommended that Plaintiff should again be determined as Not Medically Qualified. (Id., pgs. 206-07).

Defendant again issued Plaintiff a Fitness-for-Duty Determination letter on November 17, 2016, finding that he was Not Medically Qualified for the DUSM position due to his condition. (Id., pgs. 208-10). It provided Plaintiff with options related to his medical disqualification, including the ability to request accommodations and

3

reassignment to a vacant administrative position. (Id.). Plaintiff did not respond to the letter in the 14 days he was given to do so and instead requested that Defendant rescind its Fitness-for-Duty Determination. (Id., pgs. 212-14). Plaintiff attached another Physician Evaluation Report from Dr. Kennedy to his request. Dr. Kennedy's report, dated December 6, 2016, indicated that Plaintiff would be restricted from law enforcement activities and it was unknown when Plaintiff would reach his maximum medical improvement. (Id., pgs. 217-18).

Defendant proceeded with the removal process, proposing Plaintiff's removal from his position as a DUSM on March 8, 2017. (Id., pgs. 185-89). In Plaintiff's oral reply, his representative acknowledged that Plaintiff was not medically fit for duty but asked that the removal be held in abeyance while Plaintiff underwent another surgery. (Id., pgs. 171-74). On April 20, 2017, Defendant sustained Plaintiff's removal.

By July 2017, Dr. Kennedy's prognosis for the Plaintiff was bleak. He noted: "Additional surgery is recommended and will be completed but I do not expect any substantial change in his activity restriction based on the fact that he likely to have residual pain and will have permanent restrictions as noted above." (Doc. 20-2, pg. 35) Those restrictions included:

> crawling, raising his arm above his shoulders, walking or running on slippery or uneven surfaces, jumping, kneeling, pushups, carrying more than 45 pounds and any type of climbing. He is also not able to perform any type of vigorous exercise or be involved any physical confrontation and must change his positions from sitting to standing to lying down at his discretion based on symptoms throughout the course of the day. Based on these considerations, I believe that he would not be able to fulfill the duties of a United States Marshall (sic)." (Id.)

4

Plaintiff later filed for disability retirement on August 1, 2017, stating in his application that his medical providers believed that his condition is permanent and prevents him from performing the full duties of a DUSM. (Doc. 20-2, pgs. 5-17). Plaintiff underwent his fifth back surgery in September of 2017. (Doc. 20-3, pg. 6). By April 20, 2018 found the Plaintiff to have "made substantial improvement and demonstrated an acceptable range of motion of the lumbar spine in all planes", that his strength was in tact in all muscle groups, and that he "believe[d] that it is safe for him to return to work without restrictions." (Doc. 20-2, pg. 58)

Plaintiff filed his initial appeal regarding his removal with the Merit Systems Protection Board ("MSPB") on August 1, 2018. (Doc. 20-1, pg. 2). Administrative Judge ("AJ") Nina Puglia conducted an administrative hearing on Plaintiff's challenge to his removal on November 6, 2018. (Doc. 20-2, pg. 233). In that hearing, the AJ heard the testimonies of Defendant's Reviewing Medical Officers, Dr. Shaikh and Dr. Glass, who both concluded that Plaintiff's condition was likely permanent and rendered him unable to perform the duties of a DUSM. (Id., pgs. 240-41). Plaintiff's treating physician, Dr. Kennedy, disagreed, testifying that after Plaintiff's latest surgery, he believed that Plaintiff was capable of return to his position as a DUSM. (Id.).

The AJ issued the MSPB's Initial Decision on February 1, 2019. (Id., pgs. 233-57). It determined that a preponderance of the evidence demonstrated that Plaintiff had a disabling musculoskeletal condition that is disqualifying, that recurrence of Plaintiff's back pain could not be ruled out, and that such a "recurrence would pose a reasonable probability of substantial harm because his position involves a high degree of

5

responsibility towards the public. […] If he were unable to perform his duties especially in an emergency, others may be seriously injured." (Id., pgs. 240-41). The AJ relied on testimony from Defendant's Medial Review Officers, Dr. Glass and Dr. Shaikh. Specifically, Dr. Shaikh testified that Plaintiff's condition was likely permanent in nature and would be unable to perform to duties of a DUSM. (Id., pgs. 240-42). He found it possible, but not probable, that Plaintiff would recover from his condition. (Id., pg. 241). Dr. Glass's testimony also alluded to the fact of Plaintiff's regular use of narcotics for pain medication, as reflected in his medical records. (Id., pg. 243).

The AJ explained that Plaintiff's treating physician failed to "provide a reasoned explanation for his opinion" that Plaintiff's injury and five subsequent surgeries did not predispose him to a recurrence of his condition. (Id., pg. 243). The Initial Decision also noted that Dr. Kennedy's opinion was contradicted by other evidence, such as Plaintiff's own statements that his condition persisted in the oral reply to his removal and in his application for disability retirement. (Id., pgs. 243-44). Plaintiff also claimed discrimination and that Defendant failed to offer him another position compatible with his physical limitations. (Id., pgs. 244-48). However, the AJ found that the record clearly demonstrated that Plaintiff was offered an administrative position in the Fitness-for-Duty Determinations and that Plaintiff "did not meet his burden of showing that disability discrimination or retaliation for protected activity was a motivating factor in his removal[.]" (Id.). Therefore, the AJ concluded that Plaintiff's claims failed and his removal promoted the efficiency of the service. (Id., pgs. 244, 248).

On March 3, 2019, Plaintiff filed his Petition for Review by the full MSPB Board ("Board"). (Doc. 20-3, pgs. 2-9). On May 23, 2024, the Board denied Plaintiff's Petition in its Final Order. (Id., pg. 41). The Board affirmed the AJ's Initial Decision but modified it slightly. (Id.). It did so in part because the Board had since "clarified the standard for analyzing an agency's charge of inability to perform based on a current medical condition." (Id., pg. 45). The standard required Defendant to "establish that the [Plaintiff's] medical condition prevents him from being able to safely and efficiently perform core duties of his position." (Id.). The Board concluded that Defendant proved that standard by a preponderance of the evidence. (Id., pg. 46). The Board highlighted much of the same evidence the AJ cited in the Initial Decision: Dr. Kennedy's failure to "address the potential musculoskeletal impairment as a result of five surgeries," Plaintiff's own concession, through counsel, that he was not medically fit for duty, and that Plaintiff did not elect to request an accommodation in response to Defendant's Fitness-for-Duty Determinations in July and November of 2016. (Id., pgs. 46-48). It also determined that Plaintiff failed to prove his discrimination claims because he "failed to prove that he is a qualified individual with a disability." (Id., pg. 49). The Board concluded that Defendant's removal of Plaintiff from his position as a DUSM was within the tolerable limits of reasonableness. (Id., pg. 54).

Plaintiff then appealed the Board's Final Order to the Equal Employment Opportunity Commission's Office of Federal Operations. (Doc. 3-3). It examined Plaintiff's discrimination claims and concurred with the Board's conclusion that such claims failed. (Id.). Plaintiff then filed the instant case on November 18, 2024. (Doc. 3).

## **LEGAL STANDARD**

Under the Civil Service Reform Act of 1978, district courts may review appeals from the MSPB alleging violations of the act along with claims of discrimination. *Welcher-Butler v. Brennan*, 619 Fed.Appx. 550, 551-52 (7th Cir. 2015) (citing *Kloeckner v. Solis*, 568 U.S. 41, 55 (2012)).[1] Plaintiff's appeal in this case involves claims that his removal was based, in part, on disability discrimination. As such, jurisdiction for review of the MSPB's Final Order lies with this Court.

Defendant moves for summary judgment to affirm the MSPB's Final Order that found Defendant's removal of Plaintiff from his position as a DUSM to be within tolerable limits of reasonableness. (Doc. 20). Defendant simultaneously moves for dismissal of Plaintiff's claims of discrimination for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Id.). Rule 56 provides that summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Rule 8 provides that a plaintiff state a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"A court's review of an MSPB decision is deferential, and the MSPB's decision must be affirmed unless it is '(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'" *Leonard*

---

[1] Appeals from MSPB decisions involving personnel actions without simultaneous claims of discrimination are otherwise heard exclusively by the United States Court of Appeals for the Federal Circuit. *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 425 (2017).

*v. McDonough*, No. 17 C 9259, 2024 WL 965192, *9 (N.D. Ill. Mar. 6, 2024) (citing 5 U.S.C. § 7703(c); *Delgado v. Merit Sys. Prot. Bd.*, 880 F.3d 913, 916 (7th Cir. 2018)). The arbitrary and capricious standard is highly deferential; courts will not reverse the decision of the MSPB when "the agency's evidence is sufficient to be found by a reasonable factfinder to meet the evidentiary burden applicable to the particular case." *Jacobs v. Dept. of Justice*, 35 F.3d 1543, 1545 (Fed. Cir. 1994). "The question before us is not how the court would rule upon a *de novo* appraisal of the facts of the case, but whether the administrative determination is supported by substantial evidence in the record as a whole." *Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984). This Court's review of the MSPB's decision affirming the removal of Plaintiff from his position is limited to the underlying administrative record. *Mizra v. Dep't of Treasury*, 875 F.Supp. 513, 521 (N.D. Ill. Feb. 9, 1995). Alternatively, when reviewing the MSPB's decision regarding Plaintiff's claims of discrimination in violation of federal law, courts conduct *de novo* review. *Perry*, 582 U.S. at 429 (citing 5 U.S.C. § 7703(c)).

## **ANALYSIS**

An agency may take adverse action "against an employee only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). To satisfy this requirement, the agency must show by a preponderance of the evidence that the employee's medical condition is likely to have an adverse impact on the agency's performance of its functions. *See Brown v. Dept. of Navy*, 229 F.3d 1356, 1358 (Fed. Cir. 2000); *Snyder v. Dept. of Navy*, 854 F.3d 1366, 1374 (Fed. Cir. 2017). Plaintiff "bears the burden of establishing error in the Board's decision" when seeking judicial review. *Harris v. Dept. of Veterans Affairs*, 142 F.3d

9

1463, 1467 (Fed. Cir. 1998) (citing *Cheeseman v. Office of Personnel Management*, 791 F.3d 138, 140 (Fed. Cir. 1986).

Defendant here argues that substantial evidence in the administrative record demonstrates that Plaintiff was unable to perform the full duties of a DUSM both at the time of his removal and during the pendency of the MSPB proceedings. (Doc. 20, pgs. 27-29). Defendant also asserts that the MSPB complied with the procedural requirements in reviewing the agency's removal of Plaintiff from his position. (Id., pgs. 29-30). Plaintiff responds in opposition that genuine disputes of material fact exist regarding Plaintiff's fitness for duty and Defendant failed to engage in the interactive process by failing to offer Plaintiff accommodation. (Doc. 23, pg. 3-4).

Plaintiff's first point of argument fails because it misunderstands the applicable standard of review. Plaintiff highlights that his own physician released him to full duty in August of 2018. (Id., pg. 3). However, this is only one piece of evidence among many included in the administrative record.[2] That Plaintiff disagrees with how the AJ and the Board weighed the evidence from both Plaintiff's treating physician and Defendant's Medical Review Officers does not make for genuine dispute of material fact.[3]

---

[2] Plaintiff also argues that summary judgment is premature because "the full administrative record has not been filed." (Doc. 23, pg. 4). However, Defendant filed the record as exhibits to the instant motion. (Docs. 20-1, 20-2, 20-3). Plaintiff has not sought leave to supplement the record or point to specific exhibits absent from the record.

[3] Plaintiff also cites *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795 (1999) to argue that it was inappropriate for the MSPB to consider his application for disability retirement in making its determination. (Doc. 23, pg. 4). But the Court in that case only provided that such evidence cannot create a "special negative presumption" that would prevent pursuit of discrimination claim. *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. at 801-02. The MSPB did not employ such a presumption in this case; it simply considered Plaintiff's statements in his application as another piece of evidence within the record that supported Defendant's removal of Plaintiff from his position. Even without it, the record provides substantial evidence to support the AJ and MSPB's decisions.

The AJ's Initial Decision and the Board's Final Order were supported by substantial evidence. In reviewing Plaintiff's removal from his position, the AJ determined that Defendant had met the requirements to show "a charge of physical inability to perform: (1) the disabling condition itself is disqualifying; (2) its recurrence cannot be ruled out; and (3) the duties of the position are such that a recurrence would pose a reasonable probability of substantial harm." (Doc. 20-2, pg. 240 (citing *Brown v. Dept. of the Interior*, 121 M.S.P.R. 205, ¶ 8 (2014); *Slater v. Dept. of Homeland Security*, 108 M.S.P.R. 419 ¶¶ 7, 11 (2008); 5 C.F.R. § 339.206).

As detailed above, the AJ found that the testimony of Defendant's Medical Review Officers was more probative than that of Plaintiff's treating physician, Dr. Kennedy. Dr. Kennedy's reports were also considered by Defendant's Medical Review Officers when giving their opinions as to Plaintiff's ability to perform the duties of his position. Dr. Kennedy's notes did, indeed, include observations and opinions that Plaintiff would be unable to return to duty. The AJ also found that Plaintiff conceded the point that he had a disqualifying condition through statements of Plaintiff's representative during his oral reply to the proposal for his removal providing that "as we speak to you today, Deputy Shirley is not medically fit for duty." (Doc. 20-2, pg. 240; see also Doc. 20-1 pgs. 172, 174).

The AJ also found that the agency had met its burden of showing that a recurrence of Plaintiff's condition could not be ruled out. The AJ noted that Plaintiff "was injured in 2012 and has had five back surgeries since 2013," and the extensive amount of time Plaintiff had been out of work since the injury. (Doc. 20-2, pgs. 240-41). The AJ's decision relied in part on the testimony of Defendant's Medical Review Officer, Dr. Shaikh. Dr.

11

Shaikh testified that Plaintiff's "full recovery may be possible but was not likely." (Id.). Further, Dr. Shaikh testified the chances of someone returning to work successfully is reduced after each successive back surgery. (Id.). Even Plaintiff's own treating physician could not rule out that Plaintiff's back pain would not recur. (Doc. 20-2, pg. 241).

On the final prong of the analysis, the AJ found that duties of a DUSM are such that a recurrence of Plaintiff's condition would pose a reasonable probability of substantial harm. The AJ noted that the duties of a DUSM "involves a high degree of responsibility toward the public." (Doc. 20-2, pg. 241). If Plaintiff were "unable to perform his duties, especially in an emergency, others may be seriously injured." (Id.). Based on the foregoing, the AJ concluded, and the Board confirmed, that Defendant properly removed Plaintiff for medical inability to perform the duties of his position. (Id.; Doc. 20-3, pg. 46).

The AJ and Board further found that Plaintiff's removal promoted the efficiency of the service and did not exceed the "tolerable limits of reasonableness." (Doc. 20-2, pg. 242 (citing *Brown*, 121 M.S.P.R. at ¶ 17); Doc. 20-3, pg. 50). To warrant reversal of Defendant's removal decision, Plaintiff had to present "new medical evidence that clearly and unambiguously demonstrates" that he recovered from his condition and could perform the duties of his position. (Id. (citing *Sanders v. Dept. of Homeland Security*, 122 M.S.P.R. 144 ¶ 9 (2015)). The AJ concluded that testimony and evidence from Plaintiff's treating physician failed to "clearly and unambiguously demonstrate" that Plaintiff recovered from his condition and could return to duty as a DUSM. (Doc. 20-2, pg. 242-43). The AJ cited previous reports from Dr. Kennedy that unsuccessfully returned

Plaintiff to work. Dr. Shaikh's opinion that "it is difficult to return to even office work after multiple spinal fusion procedures" and that such surgeries cause "changes to normal anatomy and physiology of the body's core." (Id.). Further, Dr. Kennedy's testimony was rebutted by Plaintiff's statement in his discrimination complaint against Defendant that he would "always have an impairment due to his back injury and that he is unlikely to fully recover." (Id.). The AJ highlighted that Plaintiff still complained of back pain even after receiving the latest report from his treating physician that he was cleared to return to service. (Id.).

The AJ and the Board also highlighted substantial evidence that Defendant engaged in an interactive process regarding offering Plaintiff the ability to request an accommodation. (Doc. 20-2, pg. 244) Both of the Fitness-for-Duty Determination letters the Defendant sent to Plaintiff provided Plaintiff with options in light of the finding that he was medically unqualified. In particular, Defendant offered Plaintiff accommodations and reassignment to an administrative position and Plaintiff failed to request either in the time frame provided. (Id.). As a result of the above analysis, the AJ found, and the Board affirmed, that Plaintiff's removal promoted the efficiency of the service because Plaintiff was removed for his inability to perform the duties of his position, he failed to present new medical evidence that he had clearly and unambiguously recovered from his condition, and he refused Defendant's attempts to reassign him. (Id.).

That Plaintiff wishes that this evidence would have been weighed in his favor does not make for a genuine dispute of material fact. The MSPB's decision to affirm Plaintiff's removal was supported by substantial evidence. Plaintiff's argument and belief that he

13

should have been reinstated to his position because his treating physician cleared him to return does not create a dispute of material fact that would render summary judgment inappropriate. It is simply Plaintiff wishing that the AJ and the Board had weighed the evidence in his favor. This Court cannot reweigh that evidence under this deferential standard of review.

As such, Plaintiff has failed to meet his burden to show that the MSPB's decision regarding his removal is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without legally required procedures; or unsupported by substantial evidence. In its review of the record, the Court cannot find the decisions of the AJ or MSPB to be arbitrary and capricious. Indeed, there was more than ample evidence in the record to support their findings, rulings and decisions. And there is no evidence in the record that would suggest that the Plaintiff was afforded a process that was deficient. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's challenge to his removal from his position as a DUSM is **GRANTED**.

## Defendant's Motion to Dismiss

In appealing his removal to the MSPB, Plaintiff also made claims of disability discrimination. The MSPB found that Plaintiff "did not meet his burden of showing that disability discrimination or retaliation for protected activity was a motivating factor in his removal and his discrimination must fail." (Doc. 20-2, pg. 248; Doc. 20-3, pgs. 49-50). After the MSPB upheld his removal, Plaintiff appealed the MSPB's Final Order to the Equal Employment Opportunity Commission, Office of Federal Operations ("OFO").

(Doc. 3-3). The OFO concurred with the MSPB's finding of no discrimination playing a role in Plaintiff's removal from his position. (Id.). Because these discrimination claims were included in Plaintiff's appeal to the MSPB and he sought review by the OFO, Plaintiff's instant case is considered a "mixed-case," and jurisdiction for judicial review of the MSPB's Final Order falls to the district courts. *See Perry*, 582 U.S. at 424-26; *see also* 29 C.F.R. § 1614.302(a) (defining "mixed case complaint" and "mixed case appeals").

In its Motion to Dismiss Plaintiff's discrimination claims, Defendant argues that Plaintiff has failed to state a claim under federal pleading standards. (Doc. 20, pgs. 30-31). Defendant asserts that Plaintiff's Complaint lacks clarity as to whether Plaintiff is asserting such a claim, and thus it fails to meet the notice pleading standard of federal courts. In particular, the Complaint contains a header that states "THE ONLY CLAIM RAISED IN THIS COMPLAINT IS THE CHALLENGE TO MY REMOVAL." (Doc. 3, pg. 2). Plaintiff further states in his Complaint that he is not arguing "that [discrimination] complaint in this [C]ourt[.]" (Doc. 3, pg. 4). Plaintiff also does not make any attempt to oppose the Defendant's Motion to Dismiss in his Response. (Doc. 23).

The United States Court of Appeals for the Seventh Circuit has stated that "a district court may hold a claim forfeited if a plaintiff fails to respond to the substance of the defendant's motion to dismiss." *Boogaard v. Nat'l Hockey League*, 891 F.3d 289, 295 (7th Cir. 2018); *see also Mourning v. Dept. of Defense*, Case. No. 23-CV-03290-SPM, 2024 WL 2133810, *2 (S.D. Ill. May 13, 2024). Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for discrimination is **GRANTED**. To the extent Plaintiff's Complaint attempts to raise the claim, it is **DISMISSED without prejudice.**

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment and Motion to Dismiss for Failure to State a Claim (Doc. 20) is **GRANTED**. Defendant's Motion to Stay Discovery (Doc. 31) is **DENIED AS MOOT**. Defendant's Motion for Status Conference (Doc. 36) is **DENIED AS MOOT**. Plaintiff's Motion for Leave to File Electronically (Doc. 35) is **GRANTED**. Clerk is **DIRECTED** to also send a copy of the Order by regular mail to the Plaintiff, Kyle W. Shirley.

**SO ORDERED.**

Dated: March 7, 2026

/s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge